**FILED**

MAR - 7 2007


CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| JAMES I. DALE, | * | CIV. 04-4153 |
| Plaintiff, | * | |
| vs. | * | REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| DARYL SLYKHUIS, Interim Warden, in his individual and official capacities; KELLY DAUGHTERS, Counselor, in his individual capacity; and MARK LEONARD, in his individual capacity, Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## BACKGROUND

Plaintiff James Dale's complaint for interference with medical care in violation of the Eighth Amendment and for relief from unsanitary conditions in the segregation unit was ordered to be served on Defendants Daughters and Slykhuis (Doc. 16). Plaintiff was directed to file an Amended Complaint which included only his claims for interference with medical care and for relief from unsanitary conditions in the segregation unit (Doc. 16).

Dale filed his Amended Complaint (Doc. 19). He later moved to amend to name Nurse Mark Leonard as a Defendant (Doc. 25). Plaintiff's proposed allegations against Mark Leonard stated Leonard "is sued in his official and individual capacity." Plaintiff's motion to add Nurse Leonard was granted (Doc 27). Dale was directed to consolidate his new allegations against Nurse Leonard for compensatory damages (Doc. 25) with the allegations in the amended complaint which

survived screening (Doc. 19) into a single second amended complaint and limit his claims as follows: the claim for injunctive relief against Warden Slykhuis for interference with medical care should be in his official capacity and the claims against Counselor Daughters and Nurse Leonard for damages should be in their individual capacities. The claims that survived screening, therefore, were for injunctive relief against Slykhuis in his official capacity and for damages against all three Defendants in their individual capacities.

Dale's Second Amended Complaint was filed, indicating that Slykhuis is being sued in his official and individual capacities and that Daughters and Leonard are being sued in their individual capacities (Doc. 33). The Defendants' motion for summary judgement (Doc. 50) followed, accompanied by a brief, statement of undisputed facts, and affidavits (Docs. 51-54). Plaintiff filed his response to the motion for summary judgment (Doc. 56), accompanied by a brief in opposition, affidavits and statement of disputed material facts (Docs 57-59). The issues are decided under the Eighth Amendment to the U.S. Constitution.

## FACTS

### A. Undisputed Facts.

Plaintiff James Dale was an inmate in the care and custody of the South Dakota Department of Corrections and housed at the South Dakota State Penitentiary (SDSP) at pertinent times. Daryl Slykhuis was the Interim Warden at the SDSP. Kelly Daughters was a counselor at the SDSP at pertinent times. Mark Leonard was a nurse at the SDSP at pertinent times. Dale said he had a prior foot or ankle injury when he was admitted to the SDSP. He was not placed under any restrictions. Dale also reported at intake that he had hepatitis C. He was placed on the chronic care protocol for inmates with hepatitis. After intake and classification Dale was transferred to the Mike Durfee State

2

Prison. On May 14, 2002, he complained of right heel and ankle discomfort at prison Health Services. He was scheduled to see a physician, who saw him on June 3, 2002, and referred him to an orthopedic physician to determine whether a heel cup might improve the discomfort. On July 24, 2002, Dr. Rodman, the orthopedic physician, prescribed custom inserts to be placed in Dale's shoes. Dr. Rodman also prescribed New Balance shoes. On October 7, 2003 Dale's requests to renew his order for an extra pillow upon which to rest his foot at night and for new orthotics were denied.

On August 2, 2004, Officer Berthelsen issued a disciplinary report to Dale for damaging state property. When Berthelsen was shaking down Dale's property upon his transfer from the Mike Durfee State Prison back to the SDSP, he confiscated one pair of insoles torn from a pair of state-issued boots and a piece of a torn, state-issued towel. Dale requested a disciplinary hearing which was conducted by Kelly Daughters on August 3, 2004. Daughters concluded that Dale had committed the prohibited offense of damaging state property. Daughters said "I don't care what Orthopedic Institute said, you are not allowed to remove the insoles from any [state-issued] shoes or boots. . . ." On the same day Dale complained he could not use the orthotics in his New Balance shoes unless he removed the insoles first. The administrative remedy request was investigated by Cliff Fantroy who talked to Nurse Mark Leonard. Leonard told Fantroy the manufacturer's insoles did not need to be removed in order to use orthotics and, indeed, the insoles would provide additional support. Slykhuis relied on this information to uphold the discipline. On October 8, 2004, Slykhuis expunged the write up related to the insoles from Dale's disciplinary record. Dale did not know the write up had been expunged from his record.

On April 20, 2006, Dale saw a nurse and complained that he had orthotics but could not use them because he could not remove the insoles from his New Balance shoes. On May 3, 2006 the

order for New Balance shoes and orthotics was renewed. It was also indicated that Dale could remove the insoles to use the orthotics. An x-ray did not show any fracture or dislocation.

In July, 2004, Dale was transferred back to the SDSP in Sioux Falls. Upon his return Dale was housed for a time in the special housing unit (SHU).

The prison policy in the SHU is:

> Electric razors will be checked out to inmates during recreation times on that section's designated shave day. The electric razor is to be used on facial hair only. Use of the razor . . . will be monitored by staff and turned in after each use.

(Doc. 53-3, p. 4, ¶ R.).

Slykhuis' involvement with Dale was limited to receiving and responding to his administrative complaints. (Dale disputed this fact but offered no contrary evidence by affidavit. His bare allegation that he disputes this fact is not sufficient to create an issue of fact to be tried by the jury.) The information provided to Mr. Slykhuis during the grievance procedure was that inmates could ask to have the electric razor disinfected at any time. Mr. Slykhuis responded to Mr. Dale's grievance by advising that Mr. Dale could have the electric razor sanitized at any time. "[A]ll they had to do was ask." (Doc. 52, ¶ 33).

### B.  Disputed facts.

Certain facts are disputed. The disputed facts are Defendants' statements of undisputed fact, paragraphs 20, 26, 29, 30, and 39 (Doc. 52). Dale's statement of disputed facts is Doc. 59.

Defendants' statement of undisputed fact, paragraph 20, indicates that the letter from Orthopedic Institute (Dr. Rodman's office) is not a part of Dales' medical filed maintained by Prison Health Services. Dale disputes this fact, referring to his affidavit, paragraphs 6-7, Exhibits B and C (Doc. 58). Exhibit B to Dale's affidavit (Doc. 58) is a letter from Orthopedic Institute instructing

4

about the use of his orthotics and Exhibit C is an invoice charging for one page from Dale's medical records dated June 30, 2005. Paragraph 6 of Dales' affidavit says on September 19, 2002, both he and the officer who took him to the Orthopedic Institute to pick up his orthotics were given a copy of the instruction letter, Exhibit B. Paragraph 7 of Dale's affidavit says on June 30, 2005, he went to Health Services at the SDSP and made a photo copy from his medical file of the instructional letter from the Orthopedic Institute.

Defendants' statement of undisputed fact, paragraph 26, indicates that according to the website for New Balance shoes, written by an osteopathic physician, orthotics can be worn in New Balance shoes over and under the manufacturer's insole. Dale disputes this fact referring to his affidavit, paragraphs 38, 39, and Ex. B. Exhibit B, the instruction letter from Orthopedic Institute, says in part "[y]ou should first remove any existing inserts, as this will not allow your custom orthotics to fit properly in your shoes." Dale's affidavit says the insoles are 1¾ inches thick, so if he does not remove the insoles before inserting the orthotics he is unable to lace and tie the shoes and "in some cases my feet will not fit in the shoes at all."

Defendants' statement of undisputed fact, paragraph 29, indicates electric razors can be checked out by inmates once a week and must be turned in after each use. Inmates who check out a razor are not permitted to share the razor with other inmates. It is the policy and practice of correctional officials in the SHU to sanitize the electric razor each time it is returned and before it is checked out again. Inmates are also allowed to request that the electric razor be disinfected at any time. Defendants' statement of undisputed fact, paragraph 30, indicates the policy and practice of correctional officials in the SHU is to sanitize the electric razor each time it is returned and before it is checked out again. Dale disputes the facts in both paragraphs 29 and 30, referring to the

affidavits of James Westvik, Steven Whitman and Lyle Human submitted by Dale (Doc. 59, Attachments 2-4). Each inmate affidavit essentially contradicts defendants' statement of undisputed fact. Each says that, on Wednesdays in the case of Whitman and Fridays in the cases of Westvik and Human, two inmates from SHU are placed into a shower cage in which they share an electric razor which to their knowledge has not been sanitized before or after their use. Westvik unequivocally says in his affidavit that two inmates are put into the shower cage to shower and to share an electric razor, and when they are finished the next two inmates enter and use the same razor which is not sanitized before re-use.[1]

Defendants' statement of undisputed fact, paragraph 39, indicates Slykhuis' involvement with Dale was limited to receiving and responding to his administrative complaints. Dale disputes this fact but offered no evidence to support his position.

### C. Assumptions Regarding Disputed Facts.

The facts are viewed in the light most favorable to Mr. Dale. For the purpose of considering Defendants' motion for summary judgment, it is assumed that the letter from Orthopedic Institute instructing Mr. Dale to remove the manufacturer's insoles in order to insert his custom made inserts is (or was) in his prison medical records. It is assumed that the manufacturer's insoles needed to be removed in order for Mr. Dale to comfortably wear his shoes using the custom made inserts. It is assumed that the SHU policy regarding use of electric razors has not not always been followed by prison personnel (i.e. that razors have sometimes been used by more than one inmate before they are sanitized), but that Dale has not shown that any request for razor sanitization has been denied.

---

[1]None of the inmates who submitted affidavits, including Mr. Dale, have indicated that they ever requested to have the razor sanitized before they used it but had their request denied by prison officials.

6

## DISCUSSION

### Summary Judgment Standard.

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Clark v. Kellog Co., 205 F.3d 1079, 1082 (8th Cir. 2000); Fed. R. Civ. P. 56(c). To avoid summary judgment, the non-moving party must "show that admissible evidence will be available at trial to establish a genuine issue of material fact." Churchill Business Credit, Inc. v. Pacific Mutual Door Co., 49 F.3d 1334, 1337 (8th Cir. 1995). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." Commercial Union Ins. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotation marks and citations omitted). "Summary judgment is an extreme remedy, to be granted only when no genuine issue exists as to any material fact." Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997).

While prisoners are entitled to the benefit of liberal construction of their pleadings because of their pro se status, Fed. R. Civ. P. 56 remains applicable to them. Quam v. Minnehaha County Jail, 821 F.2d 522 (8th Cir. 1987). Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner pro se claims without regard for these special problems. Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980) cert. den. 449 U.S. 1018, 101 S.Ct. 581, 66 L.Ed.2d 478 (1980). "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985).

7

A.  **Eighth Amendment.**

1.  **Deliberate Indifference to Serious Medical Need, Excessive Risk to Health.**

The Eighth Circuit has addressed the Eighth Amendment many times in the context of prisoner litigation. "The treatment a prisoner receives in a prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Kahle v. Leonard, __ F.3d __ 2007 WL 438769 (8th Cir. 2007). "To make out an Eighth Amendment violation arising from inadequate medical attention in a state penitentiary, inmates must show deliberate indifference to their serious illness[es] or injur[ies]. An inmate must prove that officials knew about excessive risks to his health but disregarded them and that their unconstitutional actions in fact caused his injuries." Gibson v. Weber, 433 F.3d. 642, 646 (8th Cir. 2005)(internal quotations and citations omitted). "To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." Gibson at 646.

2.  **Interference With Prescribed Treatment, Personal Involvement, Respondeat Superior.**

". . . [D]eliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. To establish deliberate indifference, a prisoner must prove he had objectively serious medical needs and the official actually knew of but deliberately disregarded those needs. Deliberate indifference may be manifested by . . . prison officials in intentionally interfering with prescribed treatment. . . . [A] supervisor is only liable for an Eighth amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. The supervisor must know about the conduct and facilitate it, approve, condone, it, or turn a blind eye [to it]. . . . Prison officials cannot substitute

8

their judgment for a medical professional's prescription." Meloy v. Bachmeier, 302 F.3d 845, 848-849 (8th Cir. 2002)(internal quotations and citations omitted). "Supervisors are not liable for Eighth Amendment claims brought under section 1983 on a respondeat superior theory. Choate v. Lockhart, 7 F. 3d. 1370, 1376 (8th Cir. 1993).

### 3. Objective and Subjective Components, Excessive Risk to Health, Definition of Serious Medical Need.

"An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. . . . [D]eliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious. . . . The failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Carnahan v. Dulany, 132 F. 3d. 1234, 1239 (8th Cir. 1997)(internal citations omitted). "In determining whether the inmate has an objectively serious medical need, . . . the need or the deprivation alleged must be *either obvious to the layperson* or supported by medical evidence, like a physician's diagnosis." Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999)(internal citations omitted)(italics in original). A jury instruction is proper when it defines "a serious medical need as one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1992).

9

**B.     Analysis of the Existence of an Eighth Amendment Violation.**

    **1.     Shoe Inserts.**

The material, undisputed facts are that as a result of a foot or ankle injury which pre-dated his admission into the SDSP, Dale had been prescribed custom inserts by Dr. Rodman, an orthopedic physician with the Orthopedic Institute. Dale was referred to the Orthopedic Institute by a medical doctor after Dale was incarcerated. Dale removed the manufacturer's insoles from his state-issued shoes or boots and substituted his custom inserts as he had been instructed to do in a letter he received from Orthopedic Institute. He was given a disciplinary writeup for damaging state-issued property for removing the manufacturer's insoles. He was found guilty of the charge. In October, 2004, the finding was expunged from his record. In May, 2006, after Dale learned the disciplinary report had been expunged from his record, he told a nurse and he was permitted to remove the state-issued insoles and substitute his orthotics.

          **(a).     Serious Medical Need.**

There is no doubt that Daughters, intentionally, not inadvertently, interfered with the prescribed course of using the custom inserts.[2] It is undisputed Daughters said "I don't care what the Orthopedic Institute says, you are not allowed to remove the insoles from any shoes or boots." Daughters did not contact Dale's prescribing physicians or advise any doctor that he intended to withhold the use of the prescribed custom inserts. See Johnson v. Hay, 931 F.2d 456, 462 (8th Cir. 1991). Intentional interference with treatment prescribed by an inmate's treating physicians is a violation of clearly established law. Johnson v. Hay at 461. Sore feet, however, do not constitute a serious medical need. Lomholt v Holder, 287 F.3d 683, (8th Cir. 2002). On the other hand, a

---

[2]Daughters was deciding the disciplinary charge which had been filed against Dale for damaging state property.

10

"serious medical need" is one which has been diagnosed by a physician as mandating treatment. Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1992). Also see Long v Nix, 877 F.Supp.1358, 1364 (S.D. Iowa 1995). As discussed next, however, an essential component of establishing an Eighth Amendment violation, i.e. the objective seriousness of the deprivation, is to measure the deprivation by reference to the effect of the delay in treatment.

### (b). Evidence of Harm.

To avoid summary judgment Dale must produce medical evidence to establish that the delay in allowing him to use his custom made inserts had a detrimental effect. Gibson, 433 F.3d. 642, at 646; Crowley v. Hedgepeth 109 F.3d 500, 502 (8th Cir. 1997). He has not done so. If the detrimental effect is clear to a layperson, then medical evidence is not necessary. Spann v. Roper, 453 F.3d. 1007, 1009 (8th Cir. 2006) citing Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. (1995) ("serious medical need is one diagnosed as requiring treatment, or one so obvious that even lay person would recognize necessity for doctor's attention."). There is an absence of medical evidence of detrimental effect, and an absence of obvious detrimental effect, in the record that Dale suffered an injury as a result of the delay in allowing him to substitute the prescribed orthotic inserts into his shoes.

Delay in furnishing medically prescribed sunglasses was the issue in Crowley. The Eighth Circuit reviewed summary judgment in favor of the defendants. For the inmate to succeed, the Eighth Circuit said, the deprivation of his Eighth Amendment rights must be "sufficiently serious." The seriousness of the deprivation should be measured "by reference to the *effect* of delay in treatment." Crowley 109 F.3d at 502 (italics in original). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. (internal

11

citation omitted). In Mr. Dale's case, although the evidence of interference with the prescribed use of his custom made inserts is clear, an Eighth Amendment violation has not occurred when measured by reference to the adverse effect of the delay— there was no adverse effect reflected by the record. As it was in Crowley, it is here— Mr. Dale has failed to establish an essential element of his Eighth Amendment claim.[3]

### 2.     Common Razor.

The facts, viewed in the light most favorable to Mr. Dale, are that prisoners are placed into a showering cage two at a time and they are given a single electric razor to share. The same razor is then given to the next two inmates who enter the shower, and so on. The razor is not sanitized before, between, or after uses. The official policy regarding use of the razor, in other words, is sometimes not followed.

In order to establish a constitutional violation Mr. Dale must show the shared use of a razor

---

[3] Erickson v. Holloway, 77 F.3d 1078 (8th Cir 1996) is distinguishable. There summary judgment was denied to Officer Carver who had intentionally interfered with medical treatment. The inmate was at the emergency room after being assaulted, a cut beneath his eye had just been stitched, and Officer Carver would not allow the Emergency Room doctor to take x-rays or to admit the inmate to the hospital overnight for observation. Officer Carver argued there was no evidence that the inmate's condition was acute or escalating, or that the alleged refusal of x-rays or hospitalization caused the inmate any harm.
Dales' case is more like Jolly v Badgett, 144 F.3d 573 (8th Cir. 1998) where the Eighth Circuit affirmed summary judgment for the prison officials who refused to give an inmate his epilepsy medications at 4 a.m. as prescribed. Rather, they gave the medications at 6 a.m. The majority of the panel said there was no evidence the prison officials knew "that a mere two-hour delay in Jolly's taking his medicine would have any adverse effect." Jolly at 573. Judge Morris Shepard Arnold would have reversed, saying the evidence that the inmate suffered a seizure, dangerously high blood pressure, and other adverse effects immediately after the defendants interfered with his prescribed medication schedule was sufficient to create a triable issue of fact. Both the majority and dissenting opinions support the conclusion there is not a triable issue in Mr. Dale's case.

posed a substantial risk of serious harm and that Mr. Slykhuis was deliberately indifferent to, or disregarded, that risk. See Farmer v. Brennan, 511 U.S. 825, 832-33, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Crow v. Montgomery, 403 F.3d 598, 601-02 (8th Cir.2005). The Eighth Amendment requires prison officials to provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970. A prison official may be liable for denying an inmate humane conditions of confinement only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. 114 S.Ct. 1970.

Mr. Dale's claim regarding the use of the electric razor was made against Slykhuis only. Slykhuis moved for summary judgment in his individual capacity on the ground that he lacked personal involvement, among other reasons. According to Slykhuis's affidavit, his involvement consisted exclusively of receiving and responding to Dale's administrative complaints. (*See* Doc. 52, ¶ 39.) Dale disputed this fact in resisting entry of summary judgment, but he failed to point to any evidence in the record that would support a factual finding to the contrary (Doc. 59, ¶ 39) and he offered no evidence to the contrary by affidavit. When Slykhuis' facts are supported with proper citations to the record, but Dale's objections to these facts are not, Slykhuis' facts are treated as undisputed and accepted as true. See Fed. R. Civ. P. 56(e) and Local Rule 56.1(C) & (D).

### (a). Substantial Risk of Serious Harm.

Mr. Dale has not furnished verifying medical evidence which suggests that he has suffered any harm or injury as a result of sharing an un-sanitized electric razor. See Dulany v.Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997). Slykhuis is entitled to summary judgment as a matter of law.

### (b). Slykhuis' Lack of Personal Involvement.

A prison official must be personally involved to be liable for deliberate indifference. Meloy v. Bachmeier, 302 F.3d 845, 848-849 (8th Cir. 2002). "District courts have generally been reluctant to find personal involvement sufficient to support liability where a prison official's involvement is limited to the receipt of a prisoner's letters or Complaints." Renelique v. Doe, 2003 WL 23023771 *9 (S.D.N.Y. 2003) (collecting cases). See also Meloy v. Schuetzle, 2000 WL 1160446 *2 (8th Cir. 2000) (prison official's alleged knowledge of inmate's grievance deemed insufficient to establish liability under § 1983); Cf. White v. Farrier, 849 F.2d 322, 327 (8th Cir.1988) (explaining that a warden's receipt of memos and grievances does not equate to actual knowledge that an inmate's rights are being violated). The information provided to Mr. Slykhuis during the grievance procedure was that inmates could ask to have the electric razor disinfected at any time. Mr. Slykhuis responded to Mr. Dale's grievance by advising that Mr. Dale could have the electric razor sanitized at any time. "[A]ll they had to do was ask." (Doc. 52, ¶ 33). Slykhuis was not aware of an excessive risk to Dale from the shared use of an electric razor, nor did he personally deny Dale the use of a sanitized electric razor, so as a matter of law Slykhuis cannot be individually liable for compensatory damages under 42 U.S.C. § 1983.

Likewise, Slykhuis as a matter of law cannot be liable to Dale for compensatory damages under § 1983 if persons he supervised denied Dale the use of a sanitized electric razor. "Supervisors are not liable for Eighth Amendment claims brought under section 1983 on a respondeat superior theory. Choate v. Lockhart, 7 F. 3d. 1370, 1376 (8th Cir. 1993). To the extent that Dale seeks to hold Slykhuis liable for actions or omissions of unnamed or unidentified correctional officers, therefore, his claim fails.

14

### C.    Qualified Immunity

There is technically no need to address qualified immunity because there has been no Eighth Amendment violation. When there has been no constitutional violation, the inquiry about qualified immunity ends. Nonetheless, in the event the reviewing court disagrees with the Eighth Amendment determination, the Defendants in this case would be entitled to qualified immunity because their conduct did not violate clearly established constitutional rights of which a reasonable person would have known.

> Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A court required to rule upon the qualified immunity issue must first consider the threshold question of whether, construed in the light most favorable to the party asserting the injury, the facts alleged show the officers' conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Only if a violation could be made out on a favorable view of the parties' submissions, do we take the next step and ask whether the right was *clearly established. Id.* at 201, 121 S.Ct. 2151.

Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005) (emphasis added). Qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed. The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000). As explained above, Plaintiff has failed to prove an Eighth Amendment violation regarding the shoe insert claim or the electric razor claim. Alternatively, however, the

15

Defendants are entitled to qualified immunity regarding these claims. In light of the Eighth Circuit authority indicating sore feet are not a serious medical need and in the absence of any knowledge that the their temporary denial of Plaintiff's special insoles caused him any physical harm, the Defendants could have reasonably believed their conduct to be lawful in light of clearly established law and the information they possessed. Smithson, 235 F.3d at 1160. Regarding the electric razors, in the absence of any evidence that the sharing of electric razors caused any inmate harm, and in the absence of any evidence that a request for sanitization was ever denied by prison officials, the Defendants could have reasonably believed their conduct to be lawful in light of clearly established law and the information they possessed. Smithson, 235 F.3d at 1160.

### D. Claims for Injunctive Relief.

Dale has sued Defendant Slykhuis in his individual capacity for money damages regarding both claims and in his official capacity for injunctive relief regarding the electric razor claim. Because he has failed to prove a constitutional violation has occurred on either claim, however, Dale cannot recover against Slykhuis in his official capacity for injunctive relief.

> Suing individuals in their official capacities is another way of pleading an action against an entity of which an officer is an agent. A state, a state agency, and a state official sued in his official capacity are not persons within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought. However, because [plaintiff] fails to substantiate the underlying alleged constitutional violation by [defendant] with factual evidence, her claim fails.

Edwards v. Wallace Community College, 49 F.3d 1517, 1524 (8th Cir. 1995). Because Dale has failed to show a constitutional violation, there is no basis to award him either § 1983 damages or the injunctive relief he seeks. See Gonzales-Perez v Harper, 26 F.3d 633, 638 (8th Cir 2001).

16

## CONCLUSION

Mr. Dale's Eighth Amendment claims fail because Mr. Dale has not produced medical evidence that he has suffered any harm or injury from the refusal to let him remove the manufacturer's insoles from his shoes in order to substitute his orthotics, or from the shared use of electric razors. Additionally, Dale has failed to show Slykhuis was personally involved in the alleged unconstitutional conduct. Supervisors are not vicariously liable for the acts or omissions of the persons they supervise. Mr. Dale's claim for injunctive relief against Mr. Slykhuis in his official capacity fails because injunctive relief cannot be awarded when there is no underlying constitutional violation.

It is respectfully **RECOMMENDED** that the defendants' motion for summary judgment (Doc. 50) should be **GRANTED**. Judgment should be entered in favor of the defendants and against the plaintiff on all of plaintiff's claims for relief. Additionally, it is ORDERED that Plaintiff's Motions to Compel (Docs. 30 and 41) and Motion to Submit Later Authority (Doc. 63) are **DENIED AS MOOT**.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 7th day of March, 2007.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, CLERK

By: _Sharon Loury_____, Deputy

(SEAL)